UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>JAMES ROBINSON,<br><br>　　　　Defendant. | Case No: CR 09-0142 DLJ<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**<br><br>[Docket No. 19] |

Presently before the Court is defendant James Robinson's ("Robinson" or "Defendant") motion to suppress evidence seized by law enforcement officers during his arrest and search of his car on January 29, 2009. Robinson is charged in a one count indictment with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). The court held an evidentiary hearing on June 25, 2010. Roger Patton appeared for the defendant, Chinhayi Coleman Cadet appeared for the government. Having read the parties' papers, reviewed the applicable law, heard argument by counsel and the testimony of witnesses, the Court hereby DENIES Robinson's motion to suppress for the reasons stated below.

**I.　　BACKGROUND**

　　A.　　FACTUAL BACKGROUND[1]

Testimony by government witnesses and defense witnesses differs on several material points and are described separately below.

---

[1] The facts described are taken from the testimony and evidence received at the evidentiary hearing and the parties' pleadings.

1. Government Testimony

On January 29, 2009, at approximately 4:45 p.m., Oakland Police Department ("OPD") officers Kevin Kaney ("Officer Kaney"), Omega Crum ("Officer Crum"), and Eugene Guerrero ("Officer Guerrero") were on patrol in a single police car near the intersection of 81st Avenue and International Boulevard.  According to each of the three officers, while traveling northbound on 81st Avenue and in the process of making a right hand turn onto International Boulevard, they each heard the loud sound of an engine accelerating, followed by the screech of tires.  Looking towards the sound, they saw a white Porsche traveling northbound on 81st Avenue, on the opposite side of International Boulevard, accelerating to approximately 50-60 miles per hour.

Officer Kaney, who was driving, believed that the driver of the Porsche - later to be identified as Robinson - was driving in an unsafe manner and decided to stop the Porsche.  The Porsche continued northbound on 81st Avenue and slowed down for a stop sign at the next intersection with Holly Street, where a speed bump was located.  The Porsche made a left onto Holly Street and then made the next immediate left onto 80th Avenue.  Officer Kaney caught up to the Porsche shortly after it made a left onto 80th Avenue, which is when Officer Kaney activated the lights and sirens on the car, and Robinson pulled over.

After the Porsche stopped, the officers' car stopped behind it.  Officer Kaney approached the driver's side of the vehicle and Officer Crum approached the passenger's side.  Guerrero took a position by the front fender of the police vehicle.  Officer Kaney asked Robinson if he knew why he had been pulled over, and Robinson responded by saying, "Well, you know I gotta run it" (Transcript of Evidentiary Hearing on Defendant's Motion to Suppress ("Transcript"), at 47:21.). Officer Kaney then asked for Robinson's driver's license, registration and proof of insurance.

Officer Crum, on the passenger's side of the Porsche, saw a prescription bottle in the center console of the Porsche.  Officer Crum asked Robinson about the bottle at which point Robinson

became visibly nervous. Robinson told the officers that the bottle was empty and, attempting to show that it was, he opened it and spilled out some white powder. Officers Kaney and Crum testified that Robinson's hands were shaking as he handled the bottle. Robinson closed the bottle and placed it back in the center console. While Robinson handled the prescription bottle, Officer Crum noticed that part of the label of the prescription bottle had been torn off.

Officer Crum, taking into account Robinson's nervousness, the torn label on the prescription bottle - a sign indicating it may contain contraband - and believing the white powder to be an illegal narcotic, removed the bottle from the Porsche. Officer Crum examined the bottle, saw white powder resembling heroin and detected the odor of vinegar, a smell that is a characteristic of powder heroin. Officer Crum informed Officer Kaney about the bottle who then examined it. Officer Kaney believed that Robinson was in possession of powder heroin and instructed Officers Crum and Guerrero to arrest Robinson for a violation of California Health & Safety Code 11350(a), possession of a controlled substance.

Officers Guerrero and Crum walked to the driver's side of the vehicle and instructed Robinson to get out of the car. Robinson, after a short delay, complied and submitted to arrest without incident. Robinson was led to the patrol car and searched incident to arrest, which led to the discovery of a loaded Sturm Ruger .45 caliber semiautomatic pistol tucked into his waistband. Robinson responded to the discovery by stating that he owned the gun. Robinson was then placed in the rear of the police vehicle.

While Robinson was in the back seat, Officer Kaney ran the serial number on the gun and discovered that the gun was listed as stolen. The computer monitor was visible to Robinson; when

he saw the information showing the gun listed as stolen he responded by saying, "That's all right. I'll get another one." (Transcript at 52:11). [2]

2.  Defense Testimony

Defendant James Robinson testified that at the date and time in question he was at the intersection of 81st Avenue and International Blvd. in Oakland driving a white Porsche 911 which had been loaned to him. He turned in front of a police car which was also at the intersection and drove North on 81st. He traveled the block at a speed of 15 to 20 miles per hour and made a stop at Holly Street. He turned left and drove to 80th Avenue again at about 15 to 20 miles per hour. He made another left and was stopped by the police. After speaking to the police he was arrested and told to get out of the car. Robinson does not dispute that a prescription bottle, with a torn label, containing some white powder, was taken from the car, but he states that the bottle was inside a closed console of the car and was not taken out until after he had been arrested and was being removed from the car. Robinson says that up to the point where he was being removed from the car that the police had done nothing with respect to the bottle.

Defendant also called Clifford Graham who had been driving on 81st Avenue near Holly Street on that afternoon. Graham testified that he saw a white Porsche drive by at about 25 miles per hour and that he made eye contact with the driver and that they had nodded at one another. He said that an Oakland police car followed the Porsche and stopped it after it had turned onto Holly Street and then onto 80th Avenue.

---

[2] Robinson argued in his opening brief that Officer Crum violated his Fifth Amendment rights by inquiring about the prescription bottle without first reading him his *Miranda* rights. In his opening brief, Robinson moved to suppress the gun arguing that but for the un-*Mirandized* custodial interrogation about the prescription bottle, he would not have been arrested and the gun discovered. At the evidentiary hearing, Robinson testified that he was arrested before the prescription bottle was even discovered.

Robinson also moved to suppress all of the statements that he made to an Officer Reed as part of a post-arrest interview at the police station regarding allegations by Robinson that he was abused by the arresting police officers. The Government stated in its opposition that it would not be introducing any of those statements into evidence. Accordingly, this motion is DENIED AS MOOT.

## II. LEGAL STANDARDS

### A. STANDING

In order to invoke the protections of the Fourth Amendment, an individual must have a "legitimate expectation of privacy in the invaded place." Minnesota v. Carter, 525 U.S. 83, 88 (1998). An ownership interest is not required to establish a legitimate expectation of privacy. United States v. Thomas, 447 F.3d 1191, 1198 (9th Cir. 2006). A defendant has standing to challenge a search of another person's car if the defendant possesses the car, has permission to use the car, and holds the keys to the car. See United States v. Portillo, 633 F.2d 1313, 1317 (9th Cir. 1980).

### B. REASONABLE SUSPICION FOR INVESTIGATORY TRAFFIC STOP

The Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops. United States v. Lopez-Soto, 205 F.3d 1101, 1104-05 (9th Cir. 2005). A law enforcement officer may conduct a traffic stop if there is reasonable suspicion to conclude that a traffic violation has occurred. United States v. Willis, 431 F.3d 709, 714-15 (9th Cir. 2005).

The constitutional reasonableness of a traffic stop does not depend on the actual motivations of the individual officers involved. Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). A stop is permissible so long as "the circumstances, viewed objectively, justify that action." Id.

### C. PROBABLE CAUSE FOR SEIZURE AND SEARCH

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. Amend. IV. The warrantless seizure of personal property by law enforcement agents is *per se* unreasonable, subject to certain exceptions. United States v. Place, 462 U.S. 696, 701 (1983). Under the automobile exception to the warrant requirement, law enforcement officials may seize and search items out of a car if they have probable cause to believe that contraband or evidence of a

1 crime will be discovered.  Carroll v. United States, 267 U.S. 132, 149 (1925); United States v.
2 Ross, 456 U.S. 798, 825 (1982).

### III.  DISCUSSION

#### A.  STANDING

As an initial matter, the Government contends that Robinson lacks standing to challenge the search and seizure because he did not have a reasonable expectation of privacy in the vehicle he was driving.  In support of this argument, the Government points out that the car is registered to a person named Patrick Strok of West Hollywood, California.  After Robinson's arrest, a friend of Robinson's attempted to retrieve the car from the impound lot with a permission letter, presumably written by Strok, and that the letter bore an allegedly forged notarization stamp.  The Government concludes that under such circumstances, Robinson cannot establish that he had permission from Strok to use the car and, therefore, Robinson had no legitimate expectation of privacy in the car. The Government noted that Robinson could establish standing by simply submitting a declaration, which Robinson did subsequent to the filing of the Government's opposition (Docket No. 25.).  The declaration stated that the car was a "loaner car" in his care and custody. (Id.)

In addition to the declaration, Robinson also testified that the Porsche was a loaner and in his care at the evidentiary hearing.  Further, even if it is true that the notarized stamp on the authorization letter was forged, it does not follow that Robinson lacked permission to use the car. The Government does not allege that the letter itself -- as opposed to the stamp -- was forged, or that car's registered owner ever reported the car stolen.   Given that Robinson was in possession of the car and its keys, these facts suggest that Robinson had permission to use the car.  See Portillo, 633 F.2d at 1317.  Based on the evidence before it, the Court finds that Robinson has standing to challenge the search.

### B. REASONABLE SUSPICION FOR INVESTIGATORY TRAFFIC STOP

Robinson argues that the initial stop of his vehicle was unlawful because he was not speeding and, consequently, the officers had no reasonable suspicion to conduct a traffic stop. In support of his position he testified on his behalf and introduced the testimony of Graham.

Officer Kaney could conduct a traffic stop so long as he has a reasonable suspicion that a traffic violation has occurred. <u>Willis</u>, 431 F.3d at 714-15. Officers Kaney, Crum and Guerrero testified that they all heard the sound of an accelerating engine and the screech of tires that caused them to look in the direction of the Porsche. The three officers also stated that they saw the Porsche speeding at approximately 50-60 miles an hour in a residential area.

The Court finds that the testimony from the June 25, 2010 evidentiary hearing establishes that Officer Kaney had reasonable suspicion to effectuate a traffic stop when he observed Robinson driving the Porsche on January 29, 2009. The Court observed the testimony of the three officers and notes that Officer Kaney's and Officer Crum's testimony was consistent with their reports of the arrest and their submitted declarations.

In regards to the testimony of Graham, Graham indicated on a map that he was on 81st Avenue near the intersection with Holly Street when he observed Robinson driving at approximately 25 miles per hour. Graham stated that Robinson was about half or more than halfway past the middle of the block heading towards Holly Street when he first observed him. The officers' testimony was that they initially observed Robinson accelerating on 81st Avenue near the intersection at International Boulevard, at the other end of the street from Graham's location. Everyone testified that Robinson slowed down and stopped at Holly Street. Thus, Graham's testimony does not contradict the officers' testimony as Robinson could have been speeding at one end of the block when observed by the officers, and have slowed down as he approached Holly Street and was observed by Graham.

The Court finds that the officers' testimony is credible and finds that there was reasonable suspicion for the traffic stop on the basis of their observations that Robinson was speeding.

Given this finding, the Court concludes that the initial stop of Robinson's vehicle did not violate his constitutional rights.  Accordingly, there is nothing about the initial traffic stop which warrants the suppression of any evidence.

### C.   UNLAWFUL ARREST

Robinson's testimony would support a finding that he was arrested unlawfully without any factual basis to support a finding of probable cause.  That finding would in turn require one to believe that the police arrested the defendant for possession of drugs even though they had no evidence that he possessed any drugs at that time, but that after the arrest, when they searched his car they found that there were in fact drugs in the car.  That sounds somewhat incredible.  The Court, having heard the evidence, finds this theory incredible.  The police testimony is credible, and the Court so finds.  Upon the discovery and examination of the bottle by the officers there was probable cause to arrest the defendant for possession of heroin.  The seizure of the firearm and ammunition, in the course of a subsequent search incident to the arrest of the defendant, was also lawful.

### IV. CONCLUSION

Accordingly, the seizure of the firearm was lawful and the Motion to Suppress is DENIED.

Dated: July 23, 2010

_____
HONORABLE D. LOWELL JENSEN
United States District Judge